UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER NILES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HILTON WORLDWIDE HOLDINGS INC., HILTON MANAGEMENT LLC, and HILTON MANAGEMENT SERVICES INC.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Christopher Niles ("Mr. Niles" or "Plaintiff") files this Class Action Complaint against Hilton Worldwide Holdings Inc., Hilton Management LLC, and Hilton Management Services Inc. (collectively "Hilton" or "Defendants") on behalf of himself and all others similarly situated, seeking an injunction requiring: (1) the provision of accessible and usable hotel beds in the "accessible" rooms at Hilton-managed properties; and, (2) the provision of accurate information regarding the accessibility characteristics of those beds in advance of reservation.

**INTRODUCTION**

1. Plaintiff's primary residence is in Lawrence County, Pennsylvania.

2. Plaintiff has a second residence in the St. Petersburg, Florida area.

3. Plaintiff was formerly employed by the Lawrence County Jail in New Castle, Pennsylvania.

4. As the result of an accident on March 3, 2011, Plaintiff sustained a T6 complete spinal cord injury and became dependent on a wheelchair for mobility.

5. Plaintiff uses a standard-sized manual wheelchair.

6. Plaintiff tests assistive devices for individuals with mobility disabilities and works as a real estate agent.

7. Both before and since his injury, Plaintiff has travelled extensively and continues to do so. As noted, Plaintiff owns property in Florida and travels there often for both business and pleasure.

8. Plaintiff is a regular consumer of hotel services in Pennsylvania, Florida and other states.

9. Plaintiff has regularly reserved hotel rooms that were described as "accessible," only to learn upon arrival that he could not safely and independently transfer from his wheelchair to the bed.

10. Plaintiff's experience is that the mattress surfaces of the beds in "accessible" rooms are often either too high, or too low, to permit a safe and independent transfer from his wheelchair to the bed, and reasonable modifications that would permit a such transfer are frequently unavailable.

11. Plaintiff has frequently attempted to determine the heights of beds in purportedly accessible hotel rooms, both by visiting hotel websites and by calling the hotels, and has found that it is often difficult or impossible to obtain reliable information.

12. This issue is well-known in the hotel industry, and Defendants are aware of this problem.

## DEFENDANTS' OBLIGATION TO PROVIDE ACCESSIBLE BEDS IN ACCESSIBLE ROOMS

13. The Department of Justice considered issuing regulations setting specific height requirements for beds in accessible hotel rooms but ultimately concluded that such regulations

were unnecessary because the Americans with Disabilities Act's ("ADA") general accessibility mandate[1] requires hotels to provide accessible beds. The DOJ stated specifically that:

> Additionally, many commenters urged the Department to regulate the height of beds in accessible hotel guest rooms . . . These commenters noted that in recent years, hotel beds have become higher as hotels use thicker mattresses, thereby making it difficult or impossible for many individuals who use wheelchairs to transfer onto hotel beds . . . . For the present, the Department reminds covered entities that they have the obligation to undertake reasonable modifications to their current policies and procedures . . .to make their facilities accessible to persons with disabilities. In many cases . . . adjusting hotel bed height may be necessary to comply with those requirements.

28 C.F.R. pt. 36, app. A, at 884 (2020).

14. While the DOJ declined to issue specific regulations on this issue, it reiterated that the ADA requires that the most important element in a hotel room – the bed – must be safely usable by hotel patrons with mobility disabilities.

---

[1] Title III of the ADA mandates that the owners, lessors, lessees, and managers of places of public accommodation not discriminate against people with disabilities: "*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."* 42 U.S.C. § 12182(a). Such discrimination specifically includes failing to ensure that places of public accommodation are physically accessible to people with disabilities. *See* 42 U.S.C. § 12182(b)(2)(A)(iv) (Defining *"a failure to remove architectural barriers"* in facilities that predate the effective date of the ADA as discrimination) and 42 U.S.C. § 12183(a)(1) and (2) (Defining *"a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities…"* and *"a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities…"* as "discrimination," respectively.)

The Department of Justice's 2010 ADA Standards for Accessible Design ("Standards") provide detailed accessibility requirements for places of public accommodation, effectively functioning as a safe harbor, i.e. an element of a place of public accommodation that complies with the Standards is not discriminatory under the ADA's accessibility mandate. But where, as in this matter, the Standards are silent, places of public accommodation must still be accessible.

15. To Plaintiff's knowledge, every court that has been presented with this issue has agreed with the DOJ's position: *See*, *Migyanko v. Aimbridge Hospitality*, *LLC*, (No. 2:20-cv-1095, 2022 WL 295880 (W.D. Pa. Feb. 1, 2022).; *Eyler v. Garrison Pittsburgh Monroeville Opco LLC*, No. CV 21-1058, 2022 WL 1032732, (W.D. Pa. Apr. 2, 2022); *Mullen v. Concord Hosp. Enters. Co, LLC*, No. 2:20-cv-01530, 2022 WL 295880 (W.D. Pa. Feb. 1, 2022); *Eyler v. Liza Luv Investors III, LLC*, No. 2:21-cv-1050, 2022 WL 2829823 (W.D. Pa. July 20, 2022); *Benoit v. Forest Motel, Inc. et al.,* No. 6:22-cv-05288, 2023 WL 7393486 (W.D. La. Nov. 8, 2023).

16. In the absence of specific regulations, hotels are afforded some flexibility regarding how they meet the ADA's general accessibility mandate. Nevertheless, hotels must provide beds that are independently accessible and can be safely used.

17. Hotels may need to make reasonable modifications to policies, practices or procedures to provide equal access to the hotel's goods and services. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

**<u>THE RESERVATION RULE: DEFENDANTS' OBLIGATION TO COMMUNICATE THE HEIGHTS OF ACCESSIBLE BEDS IN ACCESSIBLE ROOMS</u>**

18. Hotels have an obligation, referred to as "the Reservation Rule," to ensure that disabled guests can meaningfully access the reservation process. Specifically, hotels must *"[m]odify [] policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms."* 28 C.F.R. § 36.302(e)(1)(i).

19. This obligation applies to *"reservations made by any means…"* 28 C.F.R. § 36.302(e)(1).

20. Hotels' online reservation systems and front desk phone lines are both "means" of making reservations.

21. The Reservation Rule also requires hotels to *"[i]dentify and describe accessible features in the hotels and guest rooms offered through [their] reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."* 28 C.F.R. § 36.302(e)(1)(ii).

22. For Plaintiff and similarly-situated individuals, the heights of beds in accessible rooms are critical to determining whether they will be able to independently transfer into and out of those beds.

23. Hotels must provide information sufficient to allow people with disabilities to be confident that they will be able to use the beds they reserve and pay for.

**PLAINTIFF'S EXPERIENCES**

24. As noted, Plaintiff is a frequent traveler and hotel consumer who seeks hotels with beds that are usable and safe for him.

25. Plaintiff's Florida residence is located in the St. Petersburg area.

26. Plaintiff spends multiple months each year in his Florida residence.

27. Plaintiff travels extensively while in Florida and regularly uses hotel services throughout the state of Florida.

28. When considering a potential hotel, he typically reviews the hotel's website for accessibility related information, specifically including information related to the beds in the hotel's accessible rooms.

29. If there is not sufficient information on the website, Plaintiff typically calls the prospective hotel to obtain the specific accessibility information that he needs.

30. When he is in Florida, Plaintiff regularly travels statewide for both work and pleasure.

31. Plaintiff has regularly visited both the Fort Lauderdale and Buena Vista areas of Florida and he needs and desires accessible hotels in those parts of the state.

32. Plaintiff's regular visits to these locations occur annually, during the winter, spring and fall.

33. Plaintiff has researched accessibility information at specific Hilton hotel properties that he seeks to patronize if those properties meet his accessibility needs.

**HILTON FORT LAUDERDALE BEACH RESORT**

34. Plaintiff has reviewed Defendants' website for the Hilton Fort Lauderdale Beach Resort.

35. There was and is no information on the website that would permit Plaintiff to ascertain whether the beds in the hotel's "accessible" rooms could be safely and independently used by him, or by any other potential customer using a standard-sized manual wheelchair.

36. Because there was no material information on the hotel's website, Plaintiff called the hotel directly, explained the nature of his disability to the front desk attendant who answered the call, and asked about the physical characteristics of the beds in the hotel's "accessible" rooms.

37. The front desk attendant stated that he did not have the relevant information at his fingertips and placed Plaintiff on hold while he sought responsive information.

38. After Plaintiff was on hold for approximately ten minutes, the attendant returned to the call and indicated that the bed height was "13 inches."

39. Based upon his experiences as a hotel consumer, Plaintiff believed that it was unlikely that "13 inches" was an accurate measurement of the height of the bed. He stated this

fact to the attendant, and the attendant insisted that "13 inches" was accurate and that the bed height had just been measured in response to Plaintiff's call.

40. If the 13-inch measurement is accurate, that height would be too low to permit a safe and independent transfer for a hotel customer using a standard-sized manual wheelchair.

41. Although Plaintiff explained the nature of his disability to the attendant and why it was that he needed information regarding the physical characteristics of the bed, the attendant did not offer any information regarding potential modifications or alternatives that would permit Plaintiff to safely and independently transfer to the beds in the hotel's accessible rooms.

42. It is Plaintiff's belief that the bed height information communicated to him was likely inaccurate.

43. Alternatively, the beds in this hotel's accessible rooms are too low to permit safe and independent transfer from a standard sized manual wheelchair and no reasonable modification that would accommodate Plaintiff's needs was offered by the hotel.

**HILTON ORLANDO BUENA VISTA PALACE**

44. Plaintiff has reviewed the website for Defendants' Hilton Orlando Buena Vista Palace.

45. There was no information on the website that would permit Plaintiff to ascertain whether the beds in the hotel's accessible rooms could be safely and independently used by him, or by any other potential customer using a standard-sized manual wheelchair.

46. Because there was no material information available on the hotel's website, Plaintiff called the hotel directly, explained the nature of his disability to the front desk attendant, and asked about the heights of the beds in the hotel's accessible rooms.

47. The front desk attendant stated that she did not have the relevant information but offered to place Plaintiff on hold while she sought responsive information.

48. After more than 15 minutes, the attendant returned and reported that the bed height was "7 inches."

49. Plaintiff expressed his belief that the "7 inch" measurement was likely incorrect, at which point the attendant again placed Plaintiff on hold.

50. Plaintiff waited on hold for approximately 20 minutes, at which point the call was disconnected.

51. He immediately called the hotel again, using the same number that he used in the first instance.

52. The representative who answered Plaintiff's second call was at a central reservation call center, and not at the actual hotel. This representative transferred Plaintiff to an attendant at the actual hotel location.

53. Plaintiff asked to speak to the same employee who he had been speaking with originally and was told that nobody by that name worked at the hotel.

54. After Plaintiff explained that he had just spoken with this individual, the second attendant reiterated that the height of the beds in the accessible rooms was "7 inches."

55. Plaintiff again indicated that this measurement was likely incorrect.

56. He was once more placed on hold, and the second attendant eventually returned to the call and indicated that the bed height was "18 inches."

57. After being placed on hold for a total of more than half an hour, Plaintiff received conflicting information regarding the actual height of the beds in the hotel's accessible rooms and was thus unable to reasonably assess whether the rooms would be accessible to him.

58. Though Plaintiff explained the nature of his disability to both attendants who he spoke with and why he needed information regarding the physical characteristics of the bed, the attendants did not offer any information regarding potential modifications or alternatives that would permit Plaintiff to safely and independently transfer to the beds in the hotel's accessible rooms.

## JURISDICTION AND VENUE

59. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

60. Personal jurisdiction exists because Defendants own, manage and/or operate a website seeking to facilitate substantial business at Hilton-branded hotels within the Western District of Pennsylvania.

61. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

62. Plaintiff Niles, at all times relevant hereto, is and was a resident of Lawrence County, Pennsylvania. Plaintiff is a wheelchair user who is limited in the major life activity of walking.

63. Defendant Worldwide Holdings Inc. is a Delaware corporation headquartered at 7930 Jones Branch Drive, McLean, Virginia 22102.

64. Defendant Hilton Management LLC is a Delaware Limited Liability Company headquartered at 7930 Jones Branch Drive, McLean, Virginia 22102.

65. Defendant Hilton Management Services Inc. is a Delaware Corporation headquartered at 7930 Jones Branch Drive, McLean, Virginia 22102.

## CLASS ALLEGATIONS

66. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class: All individuals with qualified mobility disabilities who rely upon a standard-sized wheelchair for mobility: 1) who have accessed Defendant's website and visited the pages relating to the accessibility-related elements in accessible rooms at Hilton owned, managed or operated properties; and/or 2) who have called a Hilton owned, managed and/or operated hotel seeking information related to the accessibility elements of mobility-accessible rooms. This definition may be refined after discovery is completed.

67. Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court and will facilitate judicial economy. Plaintiff believes that he will be able to prove numerosity by discovering data maintained by or on behalf of Defendants. Plaintiff notes that Hilton tracks data regarding disabled customers and/or potential customers in multiple ways, with some of these tracking methods being described in publicly available documents.

68. Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

69. Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of,

Defendants' goods, services and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

a) Whether Defendants own, operate and/or control the website(s) and mobile application(s) at issue;

b) What hotels Defendants own, manage and/or operate;

c) What information Defendants possess regarding the accessibility characteristics of the beds in properties that they own, manage and/or operate;

d) What actions are required for Defendants to provide information relating to the accessibility characteristics of the beds in their mobility-accessible rooms on the digital platforms for the hotels that they own, manage and/or operate;

e) What actions are required for Defendants to provide accurate and timely information relating to the accessibility characteristics of the beds in their mobility-accessible rooms in response to telephone inquiries by potential guests; and,

f) What options are available to Defendants to ensure that the beds in their accessible rooms can be safely and independently used by individuals using a standard-sized wheelchair.

70. Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

71. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

**CAUSE OF ACTION**
**For Violations of 42 U.S.C. §§ 12181, *et seq.***

72. Plaintiff incorporates by reference each and every allegation herein.

73. Plaintiff brings this claim individually and on behalf of the class.

74. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

75. Defendants provide public accommodations under the ADA. 42 U.S.C. § 12181(7)(A).

76. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

77. Defendants own and/or operate one or more websites which provide information regarding Hilton owned, managed and/or operated hotels that are places of public accommodation under Title III of the ADA.

78. Defendants are responsible for ensuring that their agents provide accurate and timely information to potential guests with qualified disabilities who make telephone inquiries regarding the characteristics of the beds in their mobility-accessible rooms.

79. Defendants have engaged in illegal disability discrimination by, without limitation, failing to provide information regarding the characteristics of the beds in the mobility-accessible rooms of hotels that they own, manage and/or operate on their website; by failing to ensure that their agents at those same hotels provide accurate and timely information regarding the

characteristics of the beds in their mobility-accessible rooms in response to telephone inquiries; and/or, by failing to otherwise communicate information regarding the characteristics of the beds in the mobility-accessible rooms of hotels that they own, manage and/or operate.

80. Defendants have engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at hotels that they own, manage and/or operate;

b) affording individuals with mobility disabilities unequal access to goods, services or facilities;

c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

81. Defendants' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to the Plaintiff and the class.

82. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendants to take all steps necessary to provide: a) accessible beds in their accessible hotel rooms; and, b) accurate and timely information regarding the accessibility characteristics of the beds in their accessible rooms.

c. An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

d. Payment of costs and reasonable attorneys' fees as provided for by law; and such other additional or alternative relief as the Court finds just and proper.

Dated: February 12, 2026

Respectfully Submitted,

*/s/ R. Bruce Carlson*
R. Bruce Carlson (PA 56657)
Ian M. Brown (PA 201680)
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
(724) 730-1753

*Counsel for Plaintiff*